UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Michael Drouin and Kathleen
Drouin</u>

  v.        Civil No. 11-cv-596-JL
            Opinion No. 2012 DNH 089
<u>American Home Mortgage
Servicing, Inc., Wells Fargo
Bank, N.A., and Option One
Mortgage Corporation</u>

### **MEMORANDUM ORDER**

At first blush, this case appears to present a question that has demanded the attention of state and federal courts throughout the country over the past several years:  whether mortgagors have standing to challenge the validity of putative assignments of their mortgages to claimed assignees attempting to enforce those mortgages.  Two of the defendants argue that mortgagors have no such standing, and have moved to dismiss the complaint for that reason.  Upon closer scrutiny, however, the complaint does not squarely challenge the validity of an assignment, and thus does not implicate that question.

Plaintiffs Michael and Kathleen Drouin filed this action in state court seeking to enjoin American Home Mortgage Servicing, Inc., Wells Fargo Bank, N.A., and Option One Mortgage Corporation from foreclosing on the property securing their mortgage loan. The Drouins allege that American Home Mortgage and Wells Fargo (collectively, "Wells Fargo"), claiming to possess an assignment

of their mortgage from Sand Canyon Corporation, the successor-in-interest to Option One (the original mortgagee), have demanded payment on the mortgage and threatened to foreclose if such payment is not made.  But Sand Canyon cannot have assigned the mortgage to Wells Fargo, the Drouins allege, because it ceased holding any mortgages--including theirs--years before the alleged assignment.

Wells Fargo removed the case to this court, which has diversity jurisdiction over this matter under 28 U.S.C. § 1332. It then moved to dismiss, see Fed. R. Civ. P. 12(b)(6), asserting that the Drouins have no standing to challenge the assignment's validity and that they may not maintain a cause of action seeking to enjoin the foreclosure sale.  Both parties declined the court's offer to hold oral argument on Wells Fargo's motion.

The motion is denied.  Whatever the merits of Wells Fargo's argument as to the standing of a mortgagor to challenge the validity of an assignment, the gravamen of the Drouins' complaint is not that the assignment from Sand Canyon to Wells was invalid (though there are overtones of that as well).  Rather, the Drouins' principal grievance is that, even if the assignment was technically "valid," it cannot have served to assign their mortgage to Wells Fargo because Sand Canyon did not hold the mortgage, and could not assign what it did not have.  Because the

Drouins satisfy the requirements of standing as to that claim, and because New Hampshire law clearly establishes the right of mortgagors to file an action seeking to enjoin a foreclosure sale, the case may proceed.

## I.  **Applicable legal standard**

To survive a Rule 12(b)(6) motion to dismiss for lack of standing, a complaint must "set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." Dubois v. U.S. Dep't of Agric., 102 F.3d 1273, 1281 (1st Cir. 1996).  When reviewing the complaint under this standard, the court "accept[s] as true all well-pleaded factual averments . . . and indulge[s] all reasonable inferences therefrom in [the plaintiff's] favor." Katz v. Pershing, LLC, 672 F.3d 64, 70-71 (1st Cir. 2012) (quotation and alteration omitted).  The court "need not, however, credit "bald assertions, subjective characterizations, optimistic predictions, or problematic suppositions," and "[e]mpirically unverifiable conclusions, not logically compelled, or at least supported, by the stated facts, deserve no deference." Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998) (internal quotation marks omitted).  The following background summary is consistent with that approach.

## II.  **Background**

In 2004, Michael and Kathleen Drouin, borrowed $212,500 from Option One and, in return, granted it a mortgage on their Deerfield, New Hampshire residence.  In early 2008, Option One discontinued its mortgage loan origination activities, sold its mortgage servicing business, and changed its name to "Sand Canyon Corporation."  Not long thereafter, the State of California found that Option One--a California corporation--had violated California Financial Code § 50205 and had "conduct[ed] business in such an unsafe and injurious manner as to render further operations hazardous to the public or to customers."  The state therefore prohibited it from conducting further residential mortgage lending and servicing, or, indeed, from doing any business at all.  In an affidavit submitted in another, unrelated case in 2009, the President of Sand Canyon attested that Sand Canyon's business at that time consisted solely of dealing with litigation claims, and that it did not own "any residential real estate mortgages."

Notwithstanding that representation, and despite the fact that nothing subsequently happened to breathe new life into Sand Canyon, it purportedly assigned the Drouins' mortgage to Wells Fargo on March 24, 2011.  Wells Fargo has now demanded payment on the mortgage from the Drouins, claiming to stand in the shoes of

4

the mortgagee by virtue of this assignment.  It has also
threatened the Drouins with foreclosure, scheduled a foreclosure
sale (which the state court enjoined after this action was filed
but before its removal to this court), and maintained that it may
demand and collect mortgage payments from the Drouins unless they
affirm and restructure its claimed rights under the mortgage.

**III.  <u>Analysis</u>**

Article III of the Constitution "limits the jurisdiction of
federal courts to 'Cases' and 'Controversies.'"  Lujan v.
Defenders of Wildlife, 504 U.S. 555, 559 (1992) (quoting U.S.
Const. art. III, § 2, cl. 1).  One facet of this case-or-
controversy requirement is the doctrine of standing, which serves
to ensure that the plaintiff "is a proper party to invoke
judicial resolution of the dispute and the exercise of the
court's remedial powers."  Warth v. Seldin, 422 U.S. 490, 518
(1975).  In order to establish standing to bring a claim, a
plaintiff must demonstrate (1) an injury that is both "concrete
and particularized" and "actual or imminent"; (2) "a sufficiently
direct causal connection between the challenged action and the
identified harm"; and (3) "that a favorable resolution of her
claim would likely redress the professed injury."  Katz, 672 F.3d
at 71-72 (citing Lujan, 504 U.S. at 560).  These three
constitutional elements of standing "apply with equal force in

5

every case," and are further supplemented by prudential concerns
that "require a plaintiff to show that his claim is premised on
his own legal rights (as opposed to those of a third party), that
his claim is not merely a generalized grievance, and that it
falls within the zone of interests protected by the law invoked."
Id. at 72.

     Wells Fargo concedes that the constitutional requirements
for standing are met because plaintiffs have alleged an actual
injury that is traceable to its conduct and redressable by order
of this court.  Thus, only the prudential dimension of the
standing requirement, and more specifically, the prohibition on
raising a third party's rights, is at issue here.  Citing a
lengthy list of cases, Wells Fargo contends that any enforceable
rights in an assignment belong solely to the parties to, or
intended beneficiaries of, the assignment.  Because the Drouins
are neither, it argues, any challenge they make to the
assignment's validity necessarily invokes the rights of third
parties.

     It is difficult to quarrel with the proposition that, at
least in some cases, the obligor under a contract lacks standing
to challenge the validity of the obligee's assignment of its
rights under that contract.  In a diversity case such as this
one, the court looks to state law to determine the nature of a

plaintiff's rights, see Utah ex rel. Div. of Forestry, Fire & State Lands v. U.S., 528 F.3d 712, 721 (10th Cir. 2008); Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 118 (4th Cir. 2004), and New Hampshire law recognizes the general rule that a "debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his shoes." Woodstock Soapstone, Co., Inc. v. Carleton, 133 N.H. 809, 817 (1991) (emphasis omitted; quoting 6A C.J.S. Assignments § 115, at 780 (1975)). Thus, if the Drouins' only theory of relief in this suit was that the assignment was invalid for some reason that would make it voidable by Sand Canyon, Wells Fargo's motion might have some merit.

But that is not the Drouins' only theory of relief, or even their principal one.[1]  Instead, the Drouins claim that Sand Canyon, according to its president's own admission, did not hold any mortgages--including theirs--as of the date of the supposed

---

[1]The complaint does contain some allegations suggesting that the Drouins may seek to challenge the authority of one Tonya Hopkins, who signed the alleged assignment, to act on Sand Canyon's behalf.  That matter is the type of infirmity that would "merely render the assignment voidable" at Sand Canyon's election, and therefore could not, by itself, convey standing on the Drouins here.  See Woodstock Soapstone, 133 N.H. at 817 (obligor lacked standing to challenge signatory's authority to execute assignment).  But it is at best secondary to the Drouins' principal theory of relief.

assignment.  Therefore, they maintain, Sand Canyon could not have passed any interest in the mortgage (including the right to foreclose) to Wells Fargo, regardless of the assignment's "validity" as a purely technical matter.  Simply put, the Drouins do not argue that the assignment was somehow technically deficient or flawed as a matter of law (and thus voidable or even void); they claim that the purported assignment never took place as a matter of fact, that it simply never occurred.  Their theory--that the assignor, as a stranger to the mortgage, could not have transferred it to the assignee--"is not an attack on the Assignment itself," and thus not governed by the case law holding that debtors lack standing to raise such attacks.[2]  Bailey v. Wells Fargo Bank, N.A., No. 09-4190, 2012 WL 1192785, at *6-7 (Bkrtcy. D. Mass. Apr. 10, 2012).

The New Hampshire case law governing the type of claims the Drouins actually assert here confirms their standing.  As the New Hampshire Supreme Court has explained, "[a] debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, any matters rendering the assignment absolutely invalid or

---

[2]This theory calls to mind the venerable maxim "nemo dat quod non habet," i.e., one cannot give what one does not have.  See Mitchell v. Hawley, 83 U.S. 544, 550 (1872); Chase v. Sanborn, 5 F. Cas. 521, 523 (Clifford, Circuit Justice, C.C.D.N.H. 1874) (No. 2,628).

effective, and the lack of plaintiff's title or right to sue."
Woodstock Soapstone, 133 N.H. at 817 (emphasis omitted) (quoting
6A C.J.S. Assignments § 115, at 780 (1975)); cf. also Restatement
(Second) of Contracts § 336(1) (1981) ("By an assignment the
assignee acquires a right against the obligor only to the extent
that the obligor is under a duty to the assignor; and if the
right of the assignor would be voidable by the obligor or
unenforceable against him if no assignment had been made, the
right of the assignee is subject to the infirmity.") (emphasis
added).  The Drouins' argument that Sand Canyon did not hold
their mortgage at the time of assignment falls into at least the
first (if not all) of these categories.  If Sand Canyon itself
had, before the assignment, attempted to enforce the mortgage
through foreclosure, the Drouins could have raised precisely the
same defense against it that they now raise against Wells Fargo,
i.e., that it did not in fact own their mortgage.

    A recent case from the New Hampshire Superior Court, Newitt
v. Wells Fargo Bank, N.A., No. 213-2011-CV-00173 (N.H. Super.
July 14, 2011) (Arnold, J.), lends support to the Drouins'
position.[3]  The plaintiffs in Newitt also sought to enjoin Wells

---

    [3]Wells Fargo argues that Newitt is "not binding or
persuasive."  While it is true that Newitt is not a definitive
statement of New Hampshire law, it is far more instructive on the
issue of the nature of the Drouins' rights under New Hampshire
law than the extrajurisdictional authority Wells Fargo cites.

Fargo (acting there in its capacity as the trustee for a
securitized trust) from foreclosing on the property securing
their mortgage loan.  In 2006 or 2007, the mortgagee had assigned
the plaintiffs' mortgage to Option One/Sand Canyon, which then,
in 2010, purported to assign it to Wells Fargo.  Id., slip op. at
2.  As here, the plaintiffs--citing the selfsame affidavit of
Sand Canyon's president upon which the Drouins rely--argued that
the 2010 assignment could not have transferred any interest in
their mortgage to Wells Fargo, because Sand Canyon had ceased
holding any mortgages by 2009 at the latest.  Id. at 2-3.  There,
as here, Wells Fargo argued that the plaintiffs could not
challenge the assignment.  Id. at 3.  Judge Arnold squarely
rejected that argument, noting in the process (among other
things) that "[t]he assignment from Sand Canyon to Wells Fargo of
an interest which Sand Canyon did not possess" was no more
effective to assign the mortgage "than the lack of any assignment
at all."  Id. at 7.

Following the guidance set forth in Woodstock Soapstone and
Newitt, this court concludes that the Drouins have standing to
pursue their theory that Sand Canyon did not hold their mortgage,
and thus could not have assigned it to Wells Fargo.  Wells

Fargo's remaining argument,[4] that the Drouins may not assert a cause of action seeking to enjoin foreclosure, is easily rejected.  New Hampshire is a nonjudicial foreclosure state, in which a mortgagee or its assignee may foreclose on a property without first initiating an action in court.  See N.H. Rev. Stat. Ann. § 479:22 et seq.  Where, as here, a mortgagee attempts to undertake such a nonjudicial foreclosure, the foreclosure statutes specifically authorize the mortgagor to "assert defenses against the foreclosure by 'petition[ing] the superior court ... to enjoin the scheduled foreclosure sale.'"  Bolduc v. Beal Bank, SSB, 994 F. Supp. 82, 90 (D.N.H. 1998) (quoting N.H. Rev. Stat. Ann. § 479:25, II) (some internal quotations omitted); see also Gordonville Corp. N.V. v. LR1-A Ltd. P'ship, 151 N.H. 371, 377 (2004) (plaintiff properly challenged nonjudicial foreclosure sale by petitioning the superior court to enjoin foreclosure).  That is what the Drouins have done here.

---

[4]The memorandum in support of Wells Fargo's motion to dismiss also contains a section contending that the complaint "is insufficient on its face," but the argument set forth in that section appears to be coextensive with Wells Fargo's argument that the Drouins lack standing.  To the extent that section seeks to make some other argument as to why the complaint does not state a claim, that argument is insufficiently developed and therefore waived.  See F.T.C. v. Direct Mktg. Concepts, Inc., 624 F.3d 1, 17 (1st Cir. 2010).

IV.   **Conclusion**

For the reasons set forth above, the motion to dismiss[5] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 18, 2012

cc:   Robert M.A. Nadeau, Esq.
      Paula-Lee Chambers, Esq.
      Geoffrey M. Coan, Esq.
      Thomas C. Tretter, Esq.
      Victor Manougian, Esq.

---

[5]Document no. 23.

12